## John Fish

### *v.*

## John Leser *et al.*

1. SPECIFIC PERFORMANCE—*matter of discretion.* Courts of equity will not always enforce the specific performance of a contract. Such applications are addressed to the sound legal discretion of the court, and the court will be governed, to a great extent, by the facts and merits of each case, as it is presented.

2. SAME—*not granted when inequitable.* Specific performance will not be enforced unless the contract has been entered into with perfect fairness, and without misapprehension, misrepresentation or oppression, or where it will be unjust or inequitable to do so.

3. Where the owner of a city lot, being weak-minded, unacquainted with business matters, and understanding the English language imperfectly, was induced, by frequent solicitations, to sign a paper authorizing one claiming to act as his agent to sell the same for a certain price, and important facts, having a bearing upon the value of the property, were concealed from him, and the property, then worth $30,000, was sold for $21,000, and it also appeared that the person acting as his agent was also

agent for the buyer, and working in his interest.: *Held*, that as the contract was not entered into with perfect fairness, and without misapprehension, and was unjust and inequitable, a court of equity would not enforce its specific performance.

4. CONTRACT—*where agent making sale is agent for buyer, the contract is voidable in equity.* Where an agent employed to sell property sells the same to a purchaser for whom he is acting as agent in effecting the purchase, the seller, in equity, may avoid the contract.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

This was a bill for specific performance, filed by John Fish against John Leser and Johanna Leser, his wife. The substance of the material facts is given in the opinion of the court.

Messrs. NISSEN & BARNUM, for the appellant.

Messrs. WILKINSON, SACKETT & BEAN, for the appellees.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill, filed in the Superior Court of Cook county, by John Fish, appellant, against John Leser and Johanna Leser, appellees, to enforce the specific performance of a contract for the sale of a certain lot in Chicago. Upon the hearing of the cause, the court entered a decree dismissing the bill, and the complainant prosecuted this appeal.

Courts of equity will not always enforce the specific performance of a contract. Such applications are addressed to the sound legal discretion of the court, and the court must be governed, to a great extent, by the facts of each case, as it is presented.

A specific performance will not be decreed unless the agreement has been entered into with perfect fairness, and without misapprehension, misrepresentation or oppression. *Frisby* v. *Ballance*, 4 Scammon, 287 ; *Underwood* v. *Hitchcock*, 2 Vesey, 279. The contract must be fair, equitable and just, and the

complainant should be prepared to show that it will not be unjust or oppressive on the defendant to have the contract enforced. *Stone* v. *Pratt*, 25 Ill. 25.

We will, then, examine some of the leading facts in this case, and see if the complainant has brought himself within the principles announced, which are necessary in order to enable him to obtain the relief he asks, in a court of equity.

It appears that the defendants, or one of them, in the fall of 1871, were the owners of the property in question, and had owned and resided upon it for many years. The appellees are foreigners by birth, with but little education, and are not well acquainted with our language; they transacted but little business—indeed, the evidence shows that John Leser has, for several years, been scarcely competent to transact any business; they can write, but are unable to read our writing.

The house in which they resided, on the property in question, together with other property on the same street, was destroyed by the fire of October 9, 1871. Previous to the fire their property was not desirable, and could not readily be sold in the market, on account of the bad repute of other houses on the same street. The fire, however, removed this objection to the street, and property immediately began to advance. Farwell & Co. commenced to build on the same street, on the next block west, which also caused property to advance. These facts were unknown to the Lesers, but were well known to enterprising business men. Under these circumstances, the Lesers, soon after the fire, were sought out by one John P. White, a real estate agent in the city, who desired to get an agency to sell their property.

This property, at the time of the sale, as near as we are able to judge from the evidence, was worth $30,000—some of appellees' witnesses place it as high as $35,000, while appellant's witnesses fix its value at $21,000 to $22,000. Burt, who owned the east half of the same lot, testifies he fixed the price of his lot at $30,000, but withdrew it from

market, and would not sell at that price, and his opinion is, this lot is worth that amount.

White had several interviews with the Lesers. He wanted to act as their agent; advised them to sell; claimed that property would depreciate rather than increase in value. He never informed them that Farwell & Co., and others, were buying and preparing to build in that neighborhood—a fact that was well known to business men.

Johanna Leser, in her evidence, says : White came again ; said he had a man to buy the lot, and he would give $20,000, and we told him we would not sell for that ; he said it would not be worth more in ten years ; my husband said, if you give me $21,000 I will sell to you ; this he refused ; White told me to coax my husband to take $20,000 ; I told him I would not ; he then said, well, I will not take another step towards selling your lot, and before spring you will offer it to me for $18,000.

During this time appellant was frequently at White's office, and he and White were negotiating on the lot.

White, in his testimony, says, they had given him verbal authority to sell the lot; that, after having several interviews, he called on them with an offer from appellant of $20,000 cash for the property ; this they did not decide to take, but the next day he called again to see if they would accept the offer he had made them for appellant ; he prepared and took with him a paper, for them to execute, authorizing him to sell the lot; after discussing the matter some time, they would not accept appellant's offer, but they made this proposition : they would take $16,000 cash, and the purchaser assume and pay a mortgage of $5000 that was on the lot, and pay commissions to White ; he informed them he did not believe appellant would give that, but he would make him the offer.

The next day, which was November 1st, White called on John Leser, where he and his two sons were at work, and

obtained his signature to a paper, which turned out to be authority to sell the lot, which reads as follows:

                    "CHICAGO, *Oct.* 31, 1871.

"John P. White, real estate agent. In consideration of one dollar, by us received, we hereby authorize you to sell our lot, being the west half of lot 7, in block 94, in the School Section addition to Chicago, for the sum of twenty-one thousand dollars ($21,000) net; you to have all over that amount you can get, for your commissions for such sale. The terms of payment we require is all cash, except the assumption of a mortgage of $5000 by the buyer, now upon said lot; we to furnish abstract showing title good in us, subject to the said $5000 mortgage. This proposition good for ten days from date hereof.

          "Yours, etc.,

                    JOHN LESER,          [Seal.]
                    JOHANNA LESER."    [Seal.]

White testifies that the paper was read to Leser, and he and his two sons understood what it was. But in this he is contradicted by Leser and his two sons. They swear, a portion of it was read in a low tone, but none of them understood it. They did not know that Leser was giving any authority to White to sell the lot; supposed it was a writing that Leser would wait ten days before making a sale, but did not know it was anything further.

White then carried the paper to Johanna Leser, and she, as she testifies, saw her husband had signed it, and not knowing what it was, also executed the paper.

On November 8th White sold the property to appellant, by written contract, as follows:

                    "CHICAGO, *Nov.* 8, 1871.

"Received of John Fish five hundred dollars ($500), to apply as a payment on the following described real estate, this day bargained and sold to the said Fish, to-wit: the west half of lot seven (7), in block ninety-four (94), in the School Section addition to Chicago, sold at and for the price or sum of

twenty-one thousand dollars ($21,000), upon the following terms of payment, to-wit: the said Fish is to assume and pay a certain mortgage of five thousand ($5000) dollars, which is now upon said property, with interest from date hereof, according to its tenor and effect, and the remainder of the purchase money, to-wit: fifteen thousand five hundred ($15,500) dollars, as soon hereafter as we deliver him a good and sufficient deed of conveyance to the said described real estate, with release of dower, free and clear of all liens or incumbrances, except the above mentioned $5000 mortgage, which the said Fish assumes; we to furnish an abstract showing title good in us, said abstract to be delivered within ten days from date hereof, and the said deed to be delivered within thirty days from date hereof.

"Witness our hand and seals this day and date first above written.

JOHN LESER,   [Seal.]

JOHANNA LESER, [Seal.]

By JOHN P. WHITE, their Agent.

JOHN FISH."

When appellees were notified of the contract, they refused to ratify it.

Can it be said that this contract, which appellant is seeking to enforce, has been entered into with fairness, and without misapprehension? Important facts were artfully concealed from the Lesers by one who claimed to be their agent, and if they had been known, it can not be pretended the authority would have been given to sell.

The fact is apparent, the Lesers, who were weak-minded and unacquainted with business, terror-stricken with the great fire which, in a moment, swept away the home they had occupied for years, were overreached by a shrewd real estate dealer, who acted in the interest of another, under the guise of a friend and agent of them.

The contract can neither be said to be fair, equitable or just. To take from them property worth $30,000 for $21,-

000, when considered in connection with the other facts disclosed by this record, is an outrage that a court of equity can not for a moment tolerate or sanction.

There is, however, another principle which, when applied to this case, forbids a court of equity from decreeing a specific performance of this contract. An agent employed to sell, can not himself become the purchaser; or an agent employed to buy, can not be the seller. And, upon the same principle, it is held that a contract made by one who acts as the agent of both parties, may be avoided by either principal. Story on Agency, sec. 211.

Before this written authority to sell was given, White came to the Lesers with a proposition from appellant of $20,000, and urged them to accept it. His commissions were to come from appellant. As soon as he executes the contract of sale, he goes with appellant to the recorder's office and has it placed on record. Under his counsel and advice, appellant makes a tender of the purchase money. He takes appellant to an attorney for advice, and introduces him; nor does he stop at this. He offers to pay appellees' counsel their fees, not to exceed $1000, if, upon an examination of the papers, they should advise and effect a ratification of the contract by appellees.

These facts tend to show that this agent was employed to buy as well as to sell. Appellees had bargained for the skill and labor of White, their agent, and had a right to expect and demand his undivided services in their behalf and for their interest. This they have not secured, and a court of chancery will not lend its aid to enforce a contract which, in equity, is regarded as constructively fraudulent.

Other questions have been discussed by the counsel on each side of this case, but, in the view we have taken of the case, it becomes unnecessary to decide them.

The decree of the Superior Court will be affirmed.

*Decree affirmed.*