JAMES E. COWAN

*v.*

RICHARD CURRAN *et al.*

*Opinion filed October 24, 1905.*

1. CONTRACTS—*when contract is not binding under the Statute of Frauds.* A contract made by an agent without written authority from his principal, whereby the latter was sought to be bound to assume a pecuniary obligation on the purchase of land and to execute a note and trust deed upon the property securing the 'same, is not binding upon the principal under the Statute of Frauds.

2. SAME—*oral authority to use a person's name in purchase of land does not include pledging credit.* Oral authority to an agent by his principal to use the latter's name in the purchase of land does not justify the agent in pledging the principal's credit by obligating her to execute a note and trust deed to secure the purchase money.

3. SAME—*when ratification does not validate contract.* A contract to purchase land, made by an agent, which is not binding upon the vendee for want of authority on the part of the agent, lacks mutuality and is not binding upon the vendor, and the act of the vendee in attempting to ratify the contract by filing a bill for specific performance does not validate the contract so as to bind the vendor without his consent.

4. SAME—*when a contract cannot be specifically enforced.* A contract to sell land to a certain person and accept the note and trust deed of the latter cannot be specifically enforced against the vendor by the person for whose benefit the contract was made but whose existence was concealed from the vendor, where the con-

tract was not binding as between the nominal parties thereto and was rescinded by the vendor before he was informed of the existence and claims of the complainant.

5. PRINCIPAL AND AGENT—*when undisclosed principal cannot sue on contract with agent.* The rule permitting an undisclosed principal to sue on a contract made with an agent in his own name does not apply where exclusive credit was given to the agent by the other party.

6. SAME—*when rule that notice to agent is notice to principal does not apply.* The rule that notice to an agent is notice to his principal has no application where the party claiming the benefit of the notice colludes with the agent to deceive or defraud the principal by concealing the facts.

7. SPECIFIC PERFORMANCE—*contract must have been made without misapprehension to justify decree.* Equity will not decree. specific performance for the sale of land where the agreement was entered into through misrepresentation by one of the parties or misapprehension on the part of the other.

8. APPEALS AND ERRORS—*appeal operates as a supersedeas.* The perfecting of an appeal to the.Supreme Court operates as a. *supersedeas,* and the trial court has no power to render any further decision affecting the rights of the parties or in the enforcement of the judgment or decree.

APPEAL from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

This case has been here before, as will be seen by reference to *Cowan* v. *Kane,* 211 Ill. 572. After the decree was reversed, and the cause remanded by order of this court, entered on October 24, 1904, the cause was re-docketed in the court below on November 30, 1904. On February 8, 1905, the appellee, Richard Curran, who had not theretofore been a party to the proceeding, and whose absence from the record as a party was one of the causes of reversal upon the former hearing, filed a petition, representing that he had an interest in the contract described in the bill, and asking leave to become a party defendant, to file an answer and cross-bill *instanter,* and for a rule on appellant, Cowan, to answer the same. On the same day, to-wit, February 8, 1905, Curran

was given leave to become a party defendant, answer the bill and file a cross-bill *instanter,* and rule was entered upon appellant to answer the cross-bill.

On February 8, 1905, appellee, Curran, filed an answer to the original bill of the appellant, which had been filed for the purpose of removing the recorded contract as an alleged cloud upon Cowan's title, setting up that he was a contractor and builder in Chicago, and desired to purchase land in the vicinity of the land in controversy for the purpose of erecting a block of buildings thereon, and wished to make the purchase in Mrs. Kane's name; that she consented and authorized him to sign her name and pay the earnest money for her and represent her in matters connected therewith; that the contract is a *bona fide* contract of sale by appellant and of purchase by Kane for and in behalf of Curran, signed by him in her name at her request; that he furnished Kane the sum of $500.00 as a deposit, and afterwards furnished her $2500.00, and tendered it in the name of Kane to Pridmore; that he desired to construct a building before fall weather set in, and repeatedly urged Pridmore to close the sale; that he was satisfied with the title; that he prepared and sent by Pridmore to Cowan a warranty deed for execution by Cowan and his wife, but denies that such action was taken with fraudulent intent; that he believes Cowan delivered an abstract of title, to Mrs. Kane, and afterwards called at her home, and had conversations with her, but denies that Kane made the representations, alleged to have been made by her; that Mrs. Kane prepared a note and trust deed for $7000.00 to conform with the contract, and alleged that the contract was performed on the part of the purchaser.

On February 8, 1905, Richard Curran, the appellee, filed a cross-bill, praying for a specific performance of the contract by the conveyance of the property either to himself or to Mrs. Kane; and therein alleged that in August, 1903, he applied to Pridmore for terms of the sale of the property, and was advised that the price was $10,000.00, payable

$3000.00 cash, and the balance in six months; that he agreed
to purchase upon those terms, "but, in order to avoid the ad-
vertising of his intentions, he would arrange with Teresa
Kane to make the purchase in her name and to hold the title
thereto for him; that the proposed arrangement was agreed
to by Pridmore;" that Mrs. Kane agreed to the use of her
name by him for the purpose of acquiring the title to the
property, and to sign a trust deed or mortgage to secure the
deferred payment of $7000.00; that she empowered him to
act for her in all matters in connection with the transaction;
that the written contract was entered into, as set forth in the
bill of August 24, 1903; that he signed Mrs. Kane's name
to the contract, and on August 24, 1903, deposited with Prid-
more in the name of Kane $500.00 as earnest money; that on
or about August 26, 1903, Cowan delivered to Mrs. Kane an
abstract of title, which was examined and pronounced good
by the attorney of Curran and Mrs. Kane; that on October
31, 1903, Curran tendered to Pridmore the further sum of
$2500.00, and demanded a deed, but was informed that the
deed had not been forwarded to him by Dr. Cowan; alleges
that he is ready and able to carry out the contract, and offers
to pay to Cowan, or to pay into court, $9500.00, the balance
due on the contract for a deed to either Kane or himself.

On February 8, 1905, a decree was entered by the court
below, dismissing the cross-bill of Teresa Kane for want of
equity at her cost, which cross-bill had theretofore been filed
on March 17, 1904. On February 17, 1905, the appellant,
Cowan, filed an answer to Curran's cross-bill, and therein
denied that he ever entered into any contract with Curran
for the conveyance of the land, or that Curran ever agreed
with him to purchase the land, or that Curran became a party
to the contract, or assumed its obligation; that he never
heard of Curran, or his interest in or connection with, the
transaction until the contract had been rescinded, and the
pretended obligation thereof either upon himself or Kane was
at an end; that he, Cowan, was induced to execute the con-

tract by representations, made to him by Pridmore that the purchaser was a responsible builder, who desired to improve the property immediately by the erection of buildings thereon, which would enhance the security for the deferred payment of $7000.00; that said representations were false and known to be false at the time by both Pridmore and Curran; that said Kane was not engaged in the building business, was not a responsible person, but was financially irresponsible, and did not have the money required to carry out the contract, and did not intend to improve the property; that said contract was not binding upon Kane; that she did not sign the same, but that her name was signed without any sufficient authority from Curran; that she never executed any authority in writing in accordance with the Statute of Frauds; that she was ignorant of the terms of the contract, and never bound herself, nor authorized Curran to bind her, to purchase said land or impose upon her any personal liability in connection with the purchase thereof, and that she never advanced any of the money paid or tendered; that, after the discovery of these facts and before he knew that Curran had or claimed to have any interest in the contract, and before the contract had become binding upon Teresa Kane or himself, he rescinded said contract and notified her of such rescission, and returned to her the note and trust deed, which had been sent to him on or about October 31, 1903; that said Kane acquiesced in such rescission and told Cowan that she knew nothing about the contract, and that he need not carry it out if he did not desire to do so; that the filing of his original bill was defended by and at the expense of Curran, although the latter was not a party thereto; that in her answer and cross-bill Mrs. Kane stated that Curran was her agent, and claimed that she was the principal and entitled to enforce the contract as such; that she and Curran testified on her behalf on the trial, and sought to establish her right to enforce the contract upon the theory that she was the principal therein; that, not until she was defeated

by the decision of the Supreme Court, did she or Curran take the position that he was the principal or entitled to have the contract enforced. The answer of Cowan pleads the record of this cause, and the decision of the Supreme Court, that the contract was not binding between him and Kane, in bar of any right of relief by Curran under his cross-bill; and in the answer Cowan denies that he ever received the money alleged to have been paid under the contract; that Pridmore never paid any part of the money, which he received, to Cowan; and denies that Curran has any right to specific performance.

By stipulation between the parties, all the testimony, introduced upon the first trial, was used upon the second trial. Upon the latter trial, also, an additional letter, written by Mrs. Kane's attorney, was introduced in evidence, and testimony was also introduced showing the rendition against appellee, Curran, in the circuit and superior courts of Cook county of some nine judgments in the years 1901, 1902, 1903, and 1904, and also showing the filing of a creditors' bill on one of these judgments, alleging that Curran had transferred the land belonging to him for the purpose of hindering and defrauding his creditors, and asking for the appointment of a receiver of his property.

On May 3, 1905, the court rendered a decree substantially in compliance with the prayer of Curran's cross-bill, decreeing that appellant Cowan execute to Curran, upon tender by the latter within five days from the date of the decree of the balance of the purchase money due under the terms of the contract, a good and sufficient warranty deed, conveying in fee to Teresa Kane the premises in question, and that the sufficiency of the deed shall not be called in question by reason of the non-joinder of the wife of Cowan; that Curran, upon the tender to him of such conveyance, do, in the name of Teresa Kane, pay to Cowan $2500.00 within five days, and a note of $7000.00, due on or before six months from the date of the contract, to be secured by mort-

gage or trust deed in the name of Teresa Kane on said prem-
ises; or an option by Cowan to pay upon such conveyance
the sum of $9500.00 in cash; and, upon failure of Cowan
to so execute said deed, a master in chancery be required to
execute the same in the name of Cowan.

The present appeal is prosecuted from the decree thus
entered on May 3, 1905.

HORACE KENT TENNEY, and JAMES H. WILKERSON for
appellant.

ALEX. SULLIVAN, and EDMOND MCMAHON, (FRANK L.
KRIETE, of counsel,) for appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the
court:

In August, 1902, William A. Pridmore, a real estate
agent in Chicago, wrote a letter to the appellant, Dr. James
E. Cowan, living in Galesburg, Illinois, and owning the lots
here in controversy at the corner of Sixty-first street and
Ellis avenue in Chicago, asking the price at which Cowan
would sell the lots. On September 15, 1902, in answer to
a letter from Pridmore of that day asking: "Will you please
let me know your lowest figure for all cash? If you can
make the price low I think I can sell it." Cowan wrote in
reply: "One hundred and seventy feet frontage on Sixty-
first, ninety on Ellis avenue, ripe for immediate improve-
ment; price $10,000.00." Nothing further was done until
August, 1903, when Pridmore again wrote to Cowan, ask-
ing "your present price for cash, or you can telegraph me
at my expense." Thereafter, between August 21, 1903, and
November 11, 1903, the latter day being three days before
the filing of the original bill herein by Cowan, a large num-
ber of letters passed between Pridmore and Cowan in ref-
erence to the proposed purchase of the lots in question by
Teresa Kane, and in reference to the procuring of an ab-
stract of title, and the execution of the deed, and note and

trust deed, called for by the contract. The evidence shows, and we find no contradiction in the record, that, before the contract hereinafter mentioned was executed, some communication was had between Pridmore and Cowan through the telephone. Through the telephone Pridmore told Cowan that his buyer was a builder, and wanted to, and would improve the property at once; and when asked in regard to the responsibility of the buyer, and whether there was any assurance that Cowan would get his money at the expiration of the six months, Pridmore said that the buyer was a responsible builder, and would improve the property at once, and, as soon as he commenced building, would be able to raise money on the property, so that there would be no doubt about Cowan getting his money. A day or two afterwards on August 24, 1903, Pridmore sent to Cowan by mail a written contract, dated August 24, 1903, by the terms of which Cowan agreed to sell and Teresa Kane agreed to purchase at the price of $10,000.00 the lots in question, subject to certain taxes, etc., and the contract recited that the purchaser had paid $500.00 as earnest money to be applied on said purchase when consummated, and agreed to pay, within five days after the title had been examined and found good, the further sum of $2500.00 at the office of Pridmore in Chicago, provided a good and sufficient warranty deed, conveying to the said purchaser a good title to the said premises (subject as aforesaid) should then be ready for delivery, the balance to be paid as follows: $7000.00 on or before six months from date with interest thereon at the rate of six per cent per annum to be secured by notes and mortgages, or trust deed, of even date therewith, on said premises; a complete abstract of title, or merchantable copy, to be furnished within a reasonable time, with a continuation thereof brought down to date, and in case the title, upon examination, was found materially defective within ten days after said abstract was furnished, then, unless the material defects were cured within sixty days after written notice thereof,

the said earnest money should be refunded, and the contract become inoperative; and the contract further provided that, should the purchaser fail to perform it promptly on his part, the earnest money should, at the option of the vendor, be forfeited as liquidated damages, including the commissions payable by the vendor; and the contract should be and become null and void; time was made of the essence of the contract and of all the conditions thereof, and the contract also contains this clause: "This contract and earnest money shall be held by W. A. Pridmore for the mutual benefit of the parties hereto." The contract purported to be signed by Teresa Kane in her own proper person, and, when sent to Cowan, was signed by him and returned to Pridmore in a letter written by Cowan to Pridmore, dated August 25, 1903. Its receipt was acknowledged by Pridmore on August 26, 1903.

The contract for the sale of the property showed upon its face that it was made between Cowan and Teresa Kane. Upon the original hearing the case was tried by the then defendants, Teresa Kane and William A. Pridmore, two of the present appellees, upon the theory that Teresa Kane was the purchaser of the property, and the appellee, Richard Curran, was her agent in the matter of such purchase. After the decision of this court in *Cowan* v. *Kane,* 211 Ill. 572, an answer and cross-bill were filed by Richard Curran, who, by leave of court, was made a party defendant to the proceeding, in which he takes the ground that he was the real purchaser of the property, and that Teresa Kane merely held the title for him, and at his request.

*First*—This court has already decided that Teresa Kane had no interest in the purchase of the property, and knew nothing about the terms of the contract, and never even signed the contract. All through the correspondence the fact, that Curran was the real purchaser of the property, and that the name of Teresa Kane was being used as merely a proposed holder of the title, was concealed from Cowan by

Pridmore. The proof shows that the appellant, Cowan, never had any notice or information that Curran was the purchaser of the property, or had any interest in the purchase, until about the sixth day of November, 1903. On October 30, or 31, 1903, or on some day between that date and November 6, 1903, Cowan had an interview with Mrs. Kane, in which she admitted to him that she never saw the property, that she never had seen Pridmore, that she knew nothing about the contract, that she had never signed the contract, that she cared nothing about its execution, and that, if he felt like refusing to carry it out, he was at liberty to do so. Some of the testimony of Cowan upon this subject is contradicted by Mrs. Kane, but its material features are sustained by the proof. After Cowan had this interview with Mrs. Kane, in which he learned from her that she had never executed the contract, and knew nothing about its terms, Cowan sent to Mrs. Kane a written notice, dated at Chicago, November 5, 1903, in which he notified her that the contract, dated August 24, 1903, purporting to be signed by her, and executed by Cowan, providing for the sale and conveyance of the land in question, was procured from Cowan by fraud and misrepresentation, and that he thereby rescinded the same, and declared it canceled and made void; and in said notice he stated that he thereby returned and declined to accept her note for $7000.00, dated October 28, 1903, and trust deed of same date, "which were recently mailed to me by your agent, Mr. W. A. Pridmore; I also demand an immediate release from you of any claim on this property and the return of my abstract; otherwise I shall take legal proceedings to compel the same." When this notice was sent to Mrs. Kane and received by her, Cowan had no notice whatever of Curran's relation to the property, or to the transaction.

This court found upon the former hearing, and announced in its opinion in *Cowan* v. *Kane, supra,* the following state of facts: "The party, who made the contract in fact, and the

only party in interest was Richard Curran, who was not a party to the suit. Pridmore, the real estate agent who made the sale, never saw Teresa Kane. She never saw the property, did not know the terms of the contract, and did not advance the money deposited with Pridmore, nor offer the check of $2500.00 to him, nor tender the $9500.00 on the hearing. None of the money belonged to her, and all that is claimed is, that she authorized the use of her name by Curran, the real purchaser, without the slightest interest in the contract, or any expectation of interest in the property, when conveyed. Curran signed her name to the contract, and the only authority he had was stated by him as follows : 'I told her we were buying the corner and were using her name for it, and I would sign the contract and was it all right, and she said yes, go right ahead; anything I wanted to do, do it.' * * * But in this case Curran was the actual purchaser and made the contract, and the evidence showed that Teresa Kane had no interest in it, knew nothing about it or its terms or the property, and was not the real purchaser. The decree recites that the covenants were intended to be binding on Curran and be performed by him, and whatever performance there was was by him. He was not acting as agent for her in transacting her business, but was acting for himself. Here was one not a party to the suit, performing the contract, in part, in his own interest, and on the trial tendering $9500.00 as a performance of the remainder. Cowan is not attempting to hold her as one who is apparently the principal, but insists that she repudiated the contract and disavowed the authority of Curran." The views thus expressed in our former opinion are binding upon us upon the present hearing.

*Second*—Upon the former hearing Mrs. Kane sought a specific performance of the contract by filing a cross-bill for such purpose in her own name. Since the re-docketing of the cause her cross-bill has been dismissed for want of equity, and no appeal has been taken from such order of dismissal,

The present cross-bill, asking for specific performance, is filed by Curran alone, Mrs. Kane not joining with him as co-complainant, and not being a defendant to the cross-bill, although the original bill, filed by Cowan asking for a removal of the contract as a cloud upon the title, made her a defendant, and she still remains a defendant to that bill in the suit. The question then arises whether Curran can enforce a specific performance of this contract against Cowan under the facts already stated. Certainly, there was no written contract between Cowan and Curran. Cowan's contract, if it was a contract, was with Mrs. Kane, and Curran was not a party to it upon its face. It cannot be said that Mrs. Kane was bound by this contract or that it could have been specifically performed as against her by Cowan, if she had chosen to resist an application for such performance by Cowan. She never signed the contract herself. Curran signed her name to it. The evidence tends to show that she never knew that her name had been signed to it until after the act had been done. The evidence also tends to show that she never gave any authority to Curran to sign a contract for the purchase of the property and which obligated her to pay money and to execute a note and trust deed. If she gave any authority at all, it was merely oral and amounted to a promise only to permit the title to be conveyed to her to be held for Curran. It is not claimed that she ever gave any written authority to Curran to execute the contract in question. By the terms of the contract she was not only to assume a pecuniary obligation, but she was to execute a note and a trust deed upon the property securing the same. Without written authority from her, Curran's act in signing her name to this contract was not binding upon her under the Statute of Frauds. The execution by her of the trust deed would be a conveyance of the legal title by her to a trustee, and it required written authority from her to authorize any agent to bind her by a contract to do this. It follows that, as between Cowan and Mrs. Kane, there was a want of mu-

216—39

tuality of obligation. She was not bound by the contract. "It is a general rule well understood, that a contract between parties must be mutual. * * * In Chitty on Contracts, *supra,* the author says: 'The agreement, as before observed, must, in general, be obligatory upon both parties. There are several cases satisfactorily establishing, that if the one party never were bound, on his part, to do the act which forms the consideration for the promise of the other, the agreement is void for want of mutuality.' In 1 Wharton on Contracts, page 5, the author says: 'The parties to a contract, therefore, must both be bound. * * * Without this reciprocal obligation no contract can be constituted. 'It is a general principle,' says Mr. Fry, 'that when, from personal incapacity, the nature of the contract, or any other cause, a contract is incapable of being enforced against one party, that party is equally incapable of enforcing it specifically against the other party, though its execution in the latter way might in itself be free from difficulty attending its execution in the former.' " (*Vogel* v. *Pekoc,* 157 Ill. 339; *Weaver* v. *Weaver,* 109 id. 225; *Dodge* v. *Hopkins,* 14 Wis. 686; *Townsend* v.*Corning,* 23 Wend. 435; *Atlee* v. *Bartholomew,* 69 Wis. 43). In 1 American and English Encyclopedia of Law, (2d ed. p. 1020) it is said: "A mere agency to purchase does not imply authority to pledge the credit of the principal;" the evidence shows nothing more here than merely an oral authority from Mrs. Kane to. Curran to use her name as holder of the title; but, if it be considered as orally authorizing Curran to purchase the property for her, such authority to purchase did not authorize him to pledge her credit by obligating her to execute a note and trust deed for the purchase money.

*Third*—It is said, however, that, even though a written contract is signed by one party only, it may be binding upon the other party if the latter accepts its terms. It is contended here that Mrs. Kane ratified the contract by subsequently filing a bill for the specific performance of it. But even if

such ratification took place, it could not bind Cowan, the other party to the contract, without his consent. If Curran had no authority at the time he executed the contract to bind Mrs. Kane as her agent, then she was not bound, and, this being so, Cowan was not bound because there was a want of mutuality in the contract; and if Mrs. Kane was not bound by the act of Curran, then the contract was void as to Cowan; and the subsequent act of Mrs. Kane, affirming the authority of Curran acting as her agent, could not validate the contract so as to bind Cowan without his assent. (1 Am. & Eng. Ency. of Law,—2d ed.—p. 1194; *Atlee* v. *Bartholomew*, 69 Wis. 43).

In *Lowber* v. *Connit,* 36 Wis. 183, speaking of a vendee in the contract for the purchase of land who had not signed the written contract, the court said: "He ought not to be in a position where he can hold the other party to the contract and compel its performance if advantageous to him, and at the same time be at liberty to avoid the contract on his part, if disadvantageous. Both parties ought to be bound by the contract, or, neither should be bound." Quoting this language in *Atlee* v. *Bartholomew, supra,* the Supreme Court of Wisconsin said: "This seems to be a most just rule; and where the plaintiffs were not bound by the contract when it was entered into by one claiming to be their agent, but who in fact was not such agent and had no power to bind them, they cannot afterwards, when they find the contract is advantageous to them, affirm the contract made on their behalf by such unauthorized person, and compel the other party to perform it on his part." In the American and English Encyclopedia of Law (vol. 1—2d ed.—p. 1194) it is said: "Where a contract, sought to be ratified, is partly executory, and the party seeking to ratify does so to avail himself of the unauthorized act in order to enforce a claim against a third person, such ratification is held, on the ground of want of mutuality, to be of no effect unless agreed to by such third party." There was no such agreement in the case at bar on

the part of Cowan. On the contrary, as soon as he ascer-- tained from Mrs. Kane herself her want of interest in the matter, he gave her notice of a rescission of the contract.

*Fourth*—It being true, then, that the contract was invalid as between Mrs. Kane and Dr. Cowan, it must necessarily follow that there can be no enforcement of the contract by Curran as against Dr. Cowan. Mrs. Kane was represented to Dr. Cowan to be the purchaser of the property, and he could not be compelled to convey the title to any other person than the person, with whom he contracted, under the circum- stances of this case. If the contract was not binding when made as between Mrs. Kane and Dr. Cowan, then it was not binding as between Curran and Dr. Cowan, because Mrs. Kane was merely a figurehead, representing Curran.

It is true that, where an agent makes a contract in his own name, the unknown principal may sue thereon; but this doctrine cannot be applied where exclusive credit is given to the agent. (*Kelly* v. *Thuey,* 102 Mo. 522). The letters of Cowan to Pridmore, and of Pridmore to Cowan, show that Cowan desired to sell his property to a responsible party, and to take from such party paper, which would be marketable. Mrs. Kane was not a responsible party, and her paper was not and would not be, under any circumstances, such mar- ketable paper as Cowan desired to have as a part of the pur- chase money. The sale was made by Cowan, because Mrs. Kane was represented to him as being a responsible builder, who had the means and the intention to improve the prop- erty immediately, so that it would be good security for the balance of the purchase money. Indeed, in one of the letters of Pridmore, he urges Cowan to send forward the deed, or the abstract, upon the ground that the parties desire to com- mence the improvement of the property immediately, and before the cold weather set in. The credit, therefore, in this case was given, not to the undisclosed principal, Curran, if he was an undisclosed principal, but to the proposed holder of the title, Mrs. Kane, who was represented to Cowan to be

the purchaser. He was kept in the dark as to the interest of Curran, and knew nothing about the latter's interest in the matter.

In *Kelly* v. *Thuey, supra,* the contract was for the sale of certain real estate by one Thuey and was in writing, and in it one D. T. Kelly was named as the purchaser and signed the contract; and a part of the purchase price was to be paid by a note of the purchaser, secured by a trust deed on the real estate, but it appeared that the actual purchaser was not D. T. Kelly, but James T. Kelly; and James T. Kelly brought an action for the specific performance of the contract; and, in that case, it was held that, under those circumstances, the doctrine of undisclosed principal did not apply, and that James T. Kelly could not compel specific performance of the contract, the court, after referring to the doctrine of undisclosed principal, saying: "Now, in this case, the written contract is full, complete and formal. It expresses just what the parties thereto intended it should express. The plaintiff had it prepared, and must be taken to have directed it to be made in the name of D. T. Kelly, and not in his own name. In short, the contract is one between Thuey and D. T. Kelly, and was so intended by all the parties. It contains agreements to be performed by both parties. Thuey agreed to sell the land to D. T. Kelly and agreed to take the latter's notes and deed of trust for the deferred payments. He did not agree to take the notes and deed of trust of the plaintiff for the deferred payments. To admit parol evidence to show that D. T. Kelly acted as an agent of the plaintiff, and then substitute, or add, the plaintiff as a party, is simply to make a new contract for the parties. To say that the admission of such evidence does not alter the written contract, in a case like the one in hand, is a doctrine too subtle and refined to be comprehended. D. T. Kelly contracted for the warranty deed of Thuey, and he is entitled to Thuey's covenant of warranty, and could not be required to take the covenants of some person to whom

Thuey should sell the property. * * * So, on the other hand, Thuey contracted for, and is entitled to have, the notes and deed of trust of D. T. Kelly, and he cannot be compelled to take the notes of another person. Whatever the rights may be as between the Kellys, the plaintiff is not a party to the contract with Thuey, and he cannot enforce specific performance of it and thereby compel Thuey to accept his obligations for the deferred payments." This language is precisely applicable to the case at bar. Curran directed the contract to be made in the name of Teresa Kane, and not in his own name. W. A. Pridmore says in his testimony: "The person who made the arrangement for the purchase was Richard Curran. * * * The name of the purchaser to insert in the contract was given me by Richard Curran; I sent the contract to Dr. Cowan for signature and got it back with his signature; it was signed by the purchaser before I sent it to him." Curran says in his testimony that Pridmore told him he could sell the property for $10,000.00, and furthermore says: "We agreed to take the property; the contract was signed then; he asked me in whose name to put the contract; I told him to put in Teresa Kane's name for the reason that, if there was any trouble about raising the money, her father, William Gavin, a contractor, would give me all the money I required. * * * We made a contract in Teresa Kane's name, his daughter; I signed her name to the contract; before doing so I had a. conversation with her at her house on the subject." Mrs. Kane, after stating, when she was on the stand that she never gave any authority to Curran to sign her name to the contract, at a subsequent sitting corrected her testimony by saying that she authorized him orally to do so through the telephone, thus differing with him as to the matter, because he says that he had a conversation with her at her house on the subject. As the fact, that Curran was the purchaser, was not known to Cowan before he sent the notice of rescission in November, and as Mrs. Kane was put forward as the real

purchaser, the contract as to Dr. Cowan was between him and Mrs. Kane, and not between him and Curran. He agreed to take Mrs. Kane's note and trust deed upon repre-- sentations made by Pridmore. He did not agree to take the note and trust deed of Curran. As was said by the Supreme Court of Missouri in the *Kelly case,* so it may be said here, that to admit parol evidence to show that Mrs. Kane acted as an agent of Curran, and then substitute or add Curran as a party, is simply to make a new contract for the parties. So, also, it may be said here that Cowan contracted for, and is entitled to have, the note and trust deed of Mrs. Kane and cannot be compelled to take the note of any other person; and whatever the rights may be as between Mrs. Kane and Curran, Cowan is not a party to the contract with Curran, and Curran cannot enforce a specific performance of it and thereby compel Cowan to accept his obligation for the deferred payment. It is true that the decree in this case requires Cowan to make a deed upon receiving a note and trust deed executed by Mrs. Kane for Curran. But this feature of the decree cannot be sustained, because the contract between Mrs. Kane and Cowan has already been shown to have been a void contract for want of mutuality, and for want of the signature thereto of Mrs. Kane.

In *Boston Ice Co.* v. *Potter,* 123 Mass. 28, the Supreme Court of Massachusetts said: "A party has a right to select and determine with whom he will contract and cannot have another person thrust upon him without his consent." Again, in *Winchester* v. *Howard,* 97 Mass. 303, it was said: "It is true that an agent may sell the property of his principal without disclosing the fact that he acts as an agent, or that the property is not his own, and the principal may maintain an action in his own name to recover the price. If the purchaser says nothing on the subject he is liable to the unknown principal. * * * But on the other hand, every man has a right to elect what parties he will deal with." So, in the case at bar, we think that under the circumstances

Dr. Cowan could not be forced to execute a contract with Curran when he never made any agreement with Curran, nor knew anything about Curran as a purchaser or proposed purchaser of his property.

*Fifth*—It is claimed, however, on the part of the appellees, that Cowan is to be regarded as having notice or knowledge of the fact that Curran was the real purchaser of the property. The basis of this contention is, that Pridmore was the agent of Cowan in making the sale, and that Pridmore knew that Curran was the real purchaser of the property, and that Cowan was bound by the notice or knowledge which his alleged agent, Pridmore, had. As a corollary from this position, the further position is taken that, inasmuch as Cowan is affected with the notice which his agent had, the acts of ratification already referred to were binding upon him.

It is a general rule that notice to an agent, while acting within the scope of his authority and in reference to a matter over which his authority extends, is notice to the principal. (Mechem on Agency, sec. 718; *Burton* v. *Perry,* 146 Ill. 71; *Snyder* v. *Partridge,* 138 id. 173). One of the main grounds, upon which this rule rests, is that it is the duty of the agent to disclose to his principal all notice or knowledge which he may possess, and which is necessary for the principal's protection and guidance, and that the law presumes the agent to have performed this duty. (Mechem on Agency, sec. 719). Here, Pridmore, assuming that he was the agent exclusively of Cowan, had knowledge or notice that Curran, and not Mrs. Kane, was the real purchaser of the property. And the reason why Cowan is said to be affected with such notice or knowledge is the presumption that Pridmore, if a faithful agent, would communicate the notice or knowledge, which he had, to his alleged principal, Dr. Cowan. It certainly was his duty, if he was exclusively the agent of Cowan, to tell Cowan that Curran was the purchaser of the property, because the apparent purchaser, Mrs.

Kane, was irresponsible and unable to meet the obligations of the contract. But he did not perform his duty in this respect. On the contrary, he sedulously concealed from Cowan the fact that Curran was interested in the purchase.

The rule, however, that notice to the agent, under the circumstances stated, is notice to the principal, has certain well defined exceptions. One of these exceptions is where the agent's relations to the subject matter render it certain that he will not disclose the information to his principal; and another exception is where the person, claiming the benefit of the notice, colludes with the agent to deceive or defraud the principal. (Mechem on Agency, sec. 721). The presumption, that the agent communicates the knowledge which he has to the principal, does not prevail where it is certainly to be expected that the agent will not perform this duty, "as where the agent, though nominally acting as such, is in reality acting in his own or another's interest, and adversely to that of his principal." (Mechem on Agency, sec. 723; Reinhard on Agency, secs. 356, 357; *Frenkel* v. *Hudson,* 82 Ala. 159). In Reinhard on Agency, sec. 356, *supra,* it is said: "If, however, the knowledge was such * * * as it was reasonable to presume he [the agent] would not disclose, * * * the latter [the principal] will not be affected by the agent's knowledge, though it was received by the agent in the course of the agency."

In *Frenkel* v. *Hudson, supra,* it was said: "The general rule is that notice of a fact acquired by an agent, while transacting the business of his principal, operates constructively as notice to the principal. * * * It is based upon the principle that it is the duty of the agent to act for his principal upon such notice, or to communicate the information obtained by him to his principal, so as to enable the latter to act on it. It has no application, however, to a case where the agent acts for himself, in his own interest and adversely to that of the principal. His adversary character and antagonistic interests take him out of the operation of

the general rule for two reasons: First, that he will very likely, in such case, act for himself, rather than for his principal; and, secondly, he will not be likely to communicate to the principal a fact which he is interested in concealing. It would be both unjust and unreasonable to impute notice by mere construction under such circumstances, and such is the established rule of law on this subject."

After a careful examination of all the evidence, and particularly of the correspondence between Pridmore and Cowan, as shown by the record, we are unable to resist the conclusion, that Pridmore was either a broker, acting for both vendor and vendee, Cowan and Curran, or else was swayed by his interest in favor of Curran. It was for the interest of Curran that he should not be put forward as the purchaser, but that the real purchaser should be concealed under the name of some third person. The proof shows that a large number of judgments had been rendered against Curran, and that creditors were pursuing him with suits. It was, therefore, unsafe for him to hold property in his own name. He admits that he was not himself able to furnish the money to buy this property, but expected to obtain it from one Gavin, who was his uncle, and that Gavin, who was the father of Mrs. Kane, would be more inclined to let him have the money, if the title was in Mrs. Kane, and not in himself. Whether his object in concealing his interest in the matter proceeded from a desire to avoid trouble with his creditors, or was due to the reason assigned by him for it, it was a matter which concerned him. That is to say, it was for the interest of Curran that the fact of his being the purchaser should be concealed. Pridmore knew that Curran was the purchaser, and was aware of the fact that Curran desired to cover up his own connection with the matter under the name of his cousin, Mrs. Kane. Pridmore helped Curran to carry out this scheme by accepting from him the name of the apparent purchaser, Mrs. Kane, and forwarding her name to Cowan. He was thereby acting in

the interest of Curran, and not of Cowan. It was his duty, if he was the exclusive agent of Cowan, to tell Cowan that Curran was the purchaser. But, instead of performing that duty, he lent himself to the plan of Curran, which was to conceal his own interest under the name of another person. He was, therefore, acting in the interest, to that extent, of the purchaser of the property, and not in the interest of the seller of the property.

Again, the testimony of Curran shows that, as soon as the contract was signed on the 24th of August, 1903, Curran paid to Pridmore $500.00 earnest money in a check drawn to the order of Pridmore. This check for $500.00 was cashed, and Pridmore had and still has the $500.00, and never paid a cent of it to Cowan. He was to receive, if he carried out the sale, $250.00, his commission of two and one-half per cent on $10,000.00, and, by this payment of Curran to him, he had in his hands the money out of which he could take his commission of $250.00. He says that he received this money, when the contract came back signed from Dr. Cowan. Cowan had no information of this payment to Pridmore, except such as was obtained from the recital in the contract to the following effect: "Said purchaser has paid $500.00 as earnest money." The contract contains this provision: "This contract and earnest money shall be held by W. A. Pridmore for the mutual benefit of the parties hereto." That is to say, Pridmore was to hold the $500.00, and was to hold the contract for the mutual benefit of both Cowan and Kane, or Curran. Instead of doing this, he recorded the contract in the recorder's office of Cook county on August 28, 1903, four days after it was executed, and two days after he received it from Cowan, and he so recorded it at the request of Curran. Why should he have recorded the contract at the request of Curran, if he was not acting in the interest of Curran? He was thereby, in case anything should happen afterwards to prevent an execution of the contract, beclouding Cowan's title. The very con-

tract, which he sent to Cowan, provided that, in case the title upon examination was found materially defective, the contract should become inoperative, and yet before any examination was had of the title, he put the contract upon record at the request of the purchaser, notwithstanding the fact, that, by the terms of the agreement he sent to Cowan, he was to hold it "for the mutual benefit of the parties."

In nearly all of the letters, written by Pridmore to Dr. Cowan, he speaks of the buyer in such a way as to indicate that he was rather a representative of the buyer than of the seller. In the letters he makes use of the expressions, "my buyer," "my purchaser," "my party," referring to Curran, or Mrs. Kane. There was delay in obtaining an abstract of title. The correspondence shows that Cowan had had an abstract of title given to him when he purchased the property, but that this abstract was in the hands of other parties. It could not be obtained from these parties, or was lost, so that he had to procure a new abstract, or a certified copy of an abstract. Cowan admits that this created a delay, but that it was unintentional on his part, as he could not obtain the abstract, which Pridmore kept writing for. In one of his letters to Cowan Pridmore says: "I had my parties waiting for you and received your letter. * * * My purchaser wants to commence building and is very much annoyed at the delay." This was not true. There was no purchaser, who wanted to commence building.

In a letter, written by Pridmore to Cowan, after having written several letters urging Cowan to execute a warranty deed to the property, which Pridmore had sent to him, he says: "The Kanes called upon me to-day, and they say their plans are out to build on the corner of Sixty-first street and Ellis avenue, and they are waiting for you to close; they insist on an immediate delivery of your deed, as they do not want to get into severe cold weather to start the building. They have gone to considerable expense in getting ready and are impatient at your delay. I informed them that you

would close soon, but they are mistrusting me on account of my repeated promise to them to close. Can't you make a definite promise, so that I can assure them of an early deliv-ery of your deed? I informed them to-day that I would try and get you to close at once." It will be noted that in this letter Pridmore states to Cowan as a fact: "The Kanes called upon me to-day." This language was calculated to make the impression upon Cowan that Mrs. Kane and her husband had called upon him. In his testimony, however, he says: "I never saw Mrs. Kane until after this bill was filed." His own testimony thus contradicts his statement in his let-ter, and shows its falsity. It would be impossible to point out all the expressions in this correspondence, which indicate that the leaning of Pridmore was toward the purchaser in this matter rather than toward the vendor. At any rate, the letters sufficiently show that the interest of Pridmore lay in closing the matter favorably to Curran, so as to prevent the operation of the rule that notice to him, as agent of Cowan, was notice to Cowan.

*Sixth*—Even if it be regarded as a mistaken view that Pridmore was acting more as the agent of Curran than of Cowan, yet the most favorable view of the matter is that he was the agent or broker of both parties. The rule is that "when a professional land agent acts as agent for both the seller and the buyer, and that is known to them, the law ex-acts the most perfect good faith, honesty and fairness on his part, and will not adjudge the specific performance of a con-tract thus made, unless it has been entered into with perfect fairness and without misapprehension or misrepresentation." (*Morgan* v. *Hardy,* 16 Neb. 427; 1 Am. & Eng. Ency. of Law,—2d ed.—p. 1075, and notes; *Fish* v. *Leser,* 69 Ill. 394). It cannot be said that the proof shows the most per-fect fairness on the part of the broker here, and, therefore, his knowledge cannot be imputed to Cowan, the latter hav-ing had no actual notice or knowledge whatever upon the subject.

*Seventh*—Courts of equity will not always enforce a specific performance of a contract. Such applications are addressed to the sound legal discretion of the court, and the court will be governed to a great extent by the facts and merits of each case as it is presented. Specific performance will not be decreed, unless the agreement has been entered into with perfect fairness, and without misapprehension, misrepresentation or oppression. (*Fish* v. *Leser,* 69 Ill. 394, and cases there referred to). In *Skeen* v. *Patterson,* 180 Ill. 289, this court said (p. 294) : "The law applicable to such a case is clear and well settled. Whenever there is any unfairness used in the obtaining of a contract for the sale of land, or where an agreement for such a sale has been entered into through misrepresentation by one of the parties or misapprehension on the part of the other party, equity will not enforce a specific performance. (*Taylor* v. *Merrill,* 55 Ill. 52). The rule is that a decree for specific performance will not be entered, unless the agreement has been made with perfect fairness, and without misapprehension, misrepresentation, or oppression.—*Hatch* v. *Kizer,* 140 Ill. 583." In view of the principles thus announced it cannot be said here that this agreement was entered into by Cowan without misapprehension on his part, and misrepresentation on the part of the purchaser or his representative. Hence, the case does not call for a specific performance of the contract by a court of equity. The facts of the case do not appeal to the sound legal discretion of a court of chancery in favor of the specific performance of the contract as between Curran and the appellant.

*Eighth*—The decree in this case, which is appealed from, was entered on May 3, 1905, and the appeal was perfected by the filing of the appeal bond on May 12, 1905. This appeal operated as a *supersedeas,* and its effect was to stay further proceedings until it was dismissed. The appeal having been thus perfected, the jurisdiction of this court over the subject matter and the parties attached, and the trial court

had no power to render any further decision, affecting the rights of the parties in the cause, until it should be remanded. When an appeal is perfected, the jurisdiction and control of the court below cease, and the appeal becomes a stay of all proceedings to enforce the execution of the judgment or decree. (1 Am. & Eng. Ency. of Law,—2d ed.—p. 623; *Oakes* v. *Williams*, 107 Ill. 154; *Shirk* v. *Gravel Road Co.* 110 id. 661; 2 Ency. of Pl. & Pr. p. 328; *Skinner* v. *Bland*, 87 N. C. 168; *Isler* v. *Brown*, 69 id. 125; *Freeman* v. *Henderson*, 5 Coldw. 647). Consequently, the proceedings in the lower court in June, 1905, after the present appeal was perfected by the filing of a bond, can have no effect upon the decision of this cause. At a session of the court in June, 1905, the appellee, Curran, introduced certain evidence for the purpose of showing that the judgments against him, which had been introduced in evidence, had been satisfied. The proof tends to show that these judgments were satisfied after the appeal was perfected in this case by the filing of a bond on May 12, 1905. The supplemental abstract, which brings this matter before this court, cannot be considered by the court because such evidence was presented to the trial court after the latter court had lost jurisdiction over the cause. The case, as presented to the trial court on the second hearing, showed the existence of these judgments against the appellee, Curran, and the fact that, after the case was appealed to this court, he paid off some or all of these judgments can have no influence upon the present decision.

For the reasons above stated, we are of the opinion that the decree of the Superior Court of Cook county in dismissing the original bill, and granting the relief asked by the cross-bill, is erroneous. Accordingly, the decree of the Superior Court of Cook county is reversed, and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*