## No. 8745.

THE NEW ORLEANS, BATON ROUGE AND BAYOU SARA PACKET COMPANY vs. JOHN J. BROWN.

An application for further time to file a transcript made during the course of a previous extension, and filed in the clerk's office, the court not being in session, is ample protection to the mover.

The order of the court subsequently granting such application retroacts to the day when the motion was filed.

The managing director of a corporation organized for the business of common carriers, has no right in law to use for his personal benefit and advantage, the boats owned or chartered by the company. Hence, in the absence of a special contract or agreement granting him an immunity from charges for freight on his personal shipments, he must be held liable for payment on his freights at ordinary or card rates.

Parol testimony is inadmissible to show anything against or beyond what is contained in an act of incorporation or tending to show verbal agreements conferring to one of the incorporators valuable privileges or prerogatives at variance with the essence of the act.

The unauthorized acts of an agent of a corporation may be ratified by the board of directors, and such ratification is equal to a previous authority as in the case of natural persons. The knowledge of the board of directors of a corporation of common carriers, that the managing director had assumed and performed the duties of master of one of its vessels, and this acquiescence by long silence, in his line of conduct operate a ratification thereof.

The agents of a corporation, like the agents of natural persons, are entitled to reasonable compensation for their services. In the absence of a special contract or agreement fixing their salary, the same will be regulated by the custom with regard to the particular services and their value. Hence, the managing director of a company owning steamboats, who performs the duties of master of one of the boats, when his functions as such are laborious and responsible, is entitled to compensation of the value shown by evidence, and for the rate charged, if shown to be acquiesced in by the directors.

A PPEAL from the Civil District Court for the Parish of Orleans: *Monroe, J.*

---

*E. H. Farrar* for Plaintiff and Appellee.

1. A managing director of a corporation stands in the relation of a fiduciary or trustee; he cannot contract with himself, nor take any other position in his own interest which

is adverse to his trust. 103 U. S. 657–8: 25 Beav. 586 : 1 Younge & Collyer C. C. 326; 30 Barb. 553; 37 N. Y. 317; L. R. 3 App. Cases, 1218; 59 Me. 277. The principle is not new in Louisiana. 27 A. 641.

2. Under the Civil Law his disabilities are likened unto those of a tutor: *Tutor rem pupilli emere non potest; idque porrigendum est ad similia; id est ad curatores, procuratoras, et* QUI NEGOTIA ALIENA GERUNT. The rule is inflexible. 9 Vroom, 505; 77 Ills. 426; 14 Mich. 477 : 1 Younge & Collyer C. C. 326.

3. In the absence of any resolution or act of the corporate body, granting a salary to the managing director, he *is presumed to act gratuitously*, and cannot claim any salary on the theory of an implied contract. 6 Allen, 207; 130 Mass. 391; 28 Vermont, 401; 3 B. & Ad. 125; 28 Conn. 170; 28 Penn. St. 534; Redfield on Railways, § 176.

4. If he withdraws, without objection, amounts for his salary, with the *knowledge* and *tacit acquiescence* of *all* the directors, it amounts to a ratification of his act by the corporation.

5. But acquiescence necessarily implies two things : *knowledge* and *silence* or inaction.

6. A ratification of an actual or constructive breach of trust would require the unanimous consent of *all* the directors, or of *all* the stockholders. 30 Barb. 553, 577; 11 R. I. 195; 31 Ind. 283, 348 ; 2 Fed. Rep. 877; Ang. & Ames on Corp. 11th Ed. § 304.

7. The knowledge or consent of a director acting adversely to the corporation cannot bind the corporation 12 C. E. Green, 33; 47 Iowa, 575.

8. Such knowledge must be brought home to the corporation, and the *personal* knowledge of members of a partnership, as to the terms of any contract *inter se*, is not their *official* knowledge nor is it the knowledge of their co-directors of the corporation. 3 Md. Ch. 381; 12 Bush, 451; 26 Conn. 376; 38 Conn. 208; 20 Mich. 419; 121 Mass. 490; 11 Vroom, 435; 47 Iowa, 575.

*Singleton, Browne & Choate* for Defendant and Appellant.

## ON MOTION TO DISMISS.

The opinion of the Court was delivered by

BERMUDEZ, C. J. On the return day, *i. e.*, January 15th, ult., the appellant obtained an extension of ten days to file the transcript. On the 23d following, within that term, the court not being in session, he filed a motion for an additional ten days. On the 29th, which was the first judicial day thereafter, he obtained an order allowing him ten days, from the date of the motion, filed in the clerk's office. On the 1st of February, he procured another order granting him fifteen days. The transcript was filed on the 14th of February.

The motion to dismiss charges that it was filed too late.

The first delay was to expire on the 28th of February. Delaney vs. Rochereau, 34 A. 1123. As court was not sitting, the appellant had a right to file the motion, which he did, on the 23d, in the clerk's office. State vs. Stillman, 31 A. 162.

It is all that he could have been expected to do and he has done it. The filing of the motion, five days before the delay had expired, was ample protection to him.

The second delay allowed would have expired on the 4th, but three days before it was out, *i. e.*, on the 1st of February, the appellant pro-

cured a last extension, which was to end on the 15th of February. As said, the transcript was filed on the 14th of February.

We have held: That an application filed with the clerk within the course of extension, when the court is not in session, was seasonably made and justified the extension granted on the next court day, and that the effect of the order retroacted to the date of the application. 33 A. 132 Chrétien vs. Poincy.

The transcript having been filed in time, the motion to dismiss is refused.

## ON THE MERITS.

POCHÉ, J. The plaintiff corporation was organized by notarial act under the general laws of the State, on June 7, 1878, with the following incorporators: John J. Brown, B. W. Cook, C. T. Beard, T. P. Leathers, B. S. Leathers and John Janney.

Its object was to establish a business of common carriers for freight and passengers, by one or more steamboats to run between New Orleans and Bayou Sara, on the Mississippi river.

Among other stipulations contained in the charter, it is provided that the corporation should be controlled and managed by a board of directors composed of three stockholders, with a manager, who were selected for a term of five years; the first board was composed of John J. Brown, T. P. Leathers and John Janney, and John J. Brown was selected as the manager, whose functions and powers were stipulated to be as follows: "To appoint such officers, clerks and agents as may be necessary for the transaction of the business of the company, who shall be under his control and he shall fix their salaries."

In furtherance of the object of the enterprise, the board of directors built the steamer "Edward J. Gay," which began operations in the contemplated trade on October 7, 1878, under the command of Capt. John J. Brown, with the assistance of Capt. A. Dugas. The latter was registered at the Custom-house as the captain of the boat, and who received a salary of $75 a month, paid by Capt. Brown out of his salary of $400 a month, which he retained, under his authority as manager of the company, out of the earnings of the boat. A small portion of Capt. Dugas' salary, amounting to $772 50, was paid out of the funds of the boat.

That arrangement, under which the "Gay," and at times another boat as a substitute in her place, were run in the Bayou Sara trade, continued until the month of October, 1881. On or about that time, difficul-

ties sprang up between Capt. Brown and his co-directors and different arrangements were made in the management of the boat and in the transaction of the company's business.

The trouble arose from the two other directors'·denial of Capt. Brown's right to appoint himself as captain of the boat and to fix his salary at $400 a month; and from the contesting his right to carry, free of charge, all merchandise and other supplies shipped on the boat from New Orleans to his three plantations situated on the banks of the river between Baton Rouge and Bayou Sara.

The object of this suit is to compel him to account to the company for the funds which he retained in payment of his salary at $400 a month from October, 1878, to September, 1881, for the value of the freight on all up-shipments of merchandise, etc., to his plantations, and for the passage fare of many persons whom he carried free of charge on the company's boat during the same space of time.

His defense is in substance that the enterprise of building the steamer "Edward J. Gay," and running her in the Bayou Sara trade, was a continuation of the same business previously established by Janney, Leathers and himself, as partners, in running the steamboat "Governor Allen," which had been dismantled in 1878, many of her materials having been used in the construction of the "Gay;" that the latter boat was virtually owned by the same parties, and that he had continued, as manager of the new company, the identical functions and duties which he had previously filled as the captain of the "Allen," with the same salary, the same privileges and the same prerogatives. And he further pleads the ratification of his acts by the board of directors.

·Both parties recognize plaintiff as a corporation, thus eliminating from discussion the question of the true and legal nature of the organization.

The district judge rejected plaintiff's demand for the restitution of the amount retained by the defendant Brown in payment of his salary. as manager, and condemned him to pay the following sums:

For freight due for shipments to his plantations ............. $4805 34
For wages paid by the boat to Capt. Dugas.................  772 50
For passage fare on laborers for his plantations..............  195 00

Total ....................................................$5772 84
with legal interest from judicial demand.    Defendant appeals and plaintiff moves for an amendment of the judgment, with a view to recover the amount claimed in restitution of the wages retained by the

defendant Brown during the three years of his management, which are now in litigation.

First directing our attention to the defense, which rests on the averment that the corporation which built and owns the steamer "Edward J. Gay," is virtually the co-partnership which fitted up and run the "Governor Allen" in the Bayou Sara trade, we find that defendant's position on that point is absolutely untenable.

A similar point was made by this defendant in the case of John Janney vs. J. J. Brown, decided this day (36 A. 118) in so far as Capt. Leathers is concerned. We held in that case that the latter was not a party to the partnership which carried on the common carrier's business on the "Governor Allen," and that he had no proprietary interest therein. Hence, he cannot be affected by any contract or stipulation made in or controlling that partnership.

And in addition, the act of incorporation in this case contains no reference to the previous enterprise, and it affirmatively purports to be a new and entirely different and distinct contract between new and different parties. C. T. Beard, T. P. and B. S. Leathers, and W. B. Cook, incorporators in the new enterprise, had no connection with the previous partnership. We therefore find no error in the ruling of the district judge by which he rejected the parol testimony offered by defendant with a view to show that the new enterprise rested on the same foundation as the previous partnership, and that independently of the stipulations in the act, the parties had covenanted to allow the same powers and the same prerogatives to the defendant.

Such elements of contract were inconsistent with the very essence of the act of incorporation, under which all corporate powers were vested in a board of directors and not in a single individual, as was the basis of the partnership touching the "Governor Allen."

The proffered testimony would clearly have shown a state of things contrary in their effect to what was contained in the act, and it thus fell under the prohibition of Article 2276 of the Civil Code.

These views are sufficient to justify the exclusion of such testimony, independently of the consideration that the contract set forth by the defendant is not even alleged to be the act of the corporation contracting through its established board of directors, the only mode of binding the corporate body in a contract. Bright vs. The Metairie Cemetery Association, 33 A. 58; Angel and Ames on Corporations, p. 278, and authorities therein quoted.

Under these conclusions the defense is restricted to the alleged ratification of his acts by the defendant's co-directors.

Such ratification must flow from the acquiescence of the directors with knowledge of the facts.

On the question of the free transportation of defendant's up-freights and of his laborers, the record is absolutely barren of any evidence showing that Leathers had ever acquired any knowledge of the fact that no charges were made on Brown's up-freights.

It is shown that Janney had such knowledge, that he had, at one time, remonstrated about this matter with Brown, and that under the pressure of a threat made by Brown to abandon the enterprise and to run an opposition boat, he had given his assent as an individual, to the exercise of the prerogatives claimed by Brown. But the record shows that Leathers was absent at the time and that he was entirely ignorant of the negotiations. Hence, the corporation could not be bound by the acts of Janney, one of the directors, dealing with Brown in his interests as a planter.

For the same reasons the district judge correctly held that the defendant should be charged full rates on his freights. Reductions on card rates could only result from a contract or covenant to that effect.

The agreement urged by the defendant was an entire immunity from charges on his up-freights, or in the alternative, a ratification of his claim to such an immunity. Either hypothesis excludes the pretension of an agreement for lower rates.

We shall now consider the question of the right of defendant to retain the salary which he received from the boat for three years, under the light of plaintiff's acquiescence in the defendant's course in the premises.

Plaintiff's counsel argues with force that, as no salary was stipulated in the contract, none can be claimed by the defendant and he cites numerous authorities in support of his proposition.

Were we dealing with a claim urged by defendant for such a salary, we would cheerfully yield the correctness of that proposition, as it is amply supported by law and overwhelming authorities.

But the attitude of this case is to the reverse; the defendant is not suing for a salary not provided for or contemplated in the act of incorporation, but *he* is sued for the reimbursement of his salary already received and alleged by him to have been thus received within the knowledge and with the assent of the corporation, manifested through the acquiescence of its board of directors, represented by Janney and Leathers.

The ground-work of plaintiff's argument is that a procuration or mandate is gratuitous unless there has been a contrary agreement,

C. C. art. 2991; and that jurisprudence has settled the rule that directors and other officers of corporations, even managing directors and presidents, are presumed to act gratuitously and cannot claim a salary on the theory of an implied contract. Under a slight reservation, we must concede the correctness of the rule. But we must bear in mind, as shown by numerous authorities, that the rule applies to such officers *claiming* or suing for a salary. And hence, the rule must yield some of its force when applied to cases where the officer or agent has already and continuously received for several years a regular salary, alleged to have been legalized or ratified by the continuous acquiescence of the corporation or of his principal.

But it must not be presumed that the rule is absolute in all cases; some exceptions must be recognized, especially when the duties to be performed are onerous and toilsome. The services of the managing director of a corporation, including the management or command of a steamboat, must be conceded to be of that class. The rule invoked by plaintiff has, therefore, been modified in certain cases and very respectable authority has laid down the doctrine as follows: "The agents of a corporation, like the agents of a natural person, are entitled, in legal presumption, to be paid for their services by the principal, the corporation, what they are reasonably worth. The officers of a corporation, who are to receive any compensation, are usually provided for by regular salaries. If there be no salary and no particular contract, much must depend, as in other cases, upon the custom with regard to compensation for the particular services and the expectation of the parties growing out of it." Angel and Ames on Corporations, 11th Ed. § 317.

Hence, it has been held that a bank clerk, for whose salary no provision had been made by corporate action, was allowed to recover a salary on a *quantum meruit*. Waller vs. Kentucky Bank, 3 J. J. Marsh, 206.

And, on the other hand, a bank president, under similar circumstances, was denied the right to recover compensation. 6 Allen, 207; Sawyer vs. Bank, 130 Mass. 391; Pur vs. Bank.

In a case where the president of a railroad company claimed compensation for services rendered in his said capacity, in superintending the construction of a depot, this Court held, in keeping with that rule, that he could not recover. Levisee vs. Shreveport R. R. 27 A. 641.

The duties rendered by a bank president, or a railroad president acting as superintendent of a construction, are not necessarily laborious,

like those of a clerk, hence the distinction has been recognized and made by the courts.

Now, in the case before us, it is shown that the duties performed by the defendant were laborious, toilsome and very responsible, and that such functions are customarily paid for and liberally compensated.

From the testimony of several steamboat captains and of others examined as experts, it appears that under the circumstances surrounding this particular business, and in consideration of the defendant's peculiar fitness and of his exceptional energy and zeal, his services as manager of the company and of the boat were worth the amount retained, four hundred dollars a month.

It is objected that under the charter, Brown had no authority to appoint himself as master of the company's boats, and no right or power to fix his salary. But again we are forced to consult the acts of the directors in connection with this double exercise of power. The evidence is overwhelming on the point of the directors' (Janney and Leathers) knowledge and acquiescence in the premises.

Janney once raised an objection, but as in the case of Brown's up-freights, he immediately receded from his objections and at once gave his written consent to Brown's pretensions.

The salary as paid was charged up every week in the books, which were accessible to the directors and which were frequently examined by them and by others for them. This charge continuously occurred for three long years and no objections were made thereto. A difference exists between the showing of the books on the question of the defendant's salary, and his up-freights. As no charges were made on the latter, these items did not figure on the financial books of the concern.

These shipments went no further than the *memorandum* books, for the guidance of the receiving and discharging clerks, and were not brought to the knowledge of the other directors.

In his testimony Capt. Leathers states that he expected that Capt. Brown would be compensated for his services and the record teems with evidence that they were very valuable to the company.

To the argument that the rate of his salary was exorbitant, the answer of the record is that the salary covered the services of two employees— one a sailing master, known to be a man of experience and ability in his line, the other an active business man, a shrewd manager, who was very favorably known and very influential in the trade, and who was unrelenting in his efforts to secure business for the boats and to enhance the interests of the company.

The objection that he was very frequently absent from the boat, is met by the showing that whether on shore or traveling on other boats, he never lost sight of the interests intrusted in his hands; that he constantly labored for the promotion of the boat's business and that the vessel was always skilfully manned by his substitute, Capt. Dugas.

We find abundant evidence showing the unmistakable acquiescence of his co-directors in the manner in which he performed his duties as their manager, and in the amount of salary which he received in compensation thereof. Hence, the prayer for amendment of the judgment must be declined. The conclusions of our learned brother of the district bench are correct on every branch of the case.

The judgment appealed from is therefore affirmed, with costs.