(43 South. 454.)

No. 16,347.

JACKSON BREWING CO. v. CANTON.

(March 18, 1907.    Rehearing Denied April 15, 1907.)

1. CORPORATIONS—CONTRACTS—UNAUTHORIZED ACTS OF OFFICERS.

Where the charter of a corporation provides that all its corporate powers shall be exercised, and all its business managed, by a board of directors, and that the board shall define the duties of the president and other officers, and it does not appear that the duties of the president or secretary have been defined, those officers have no authority to bind the corporation by the employment of a broker for the purchase of real estate, and, in the negotiation between the broker (assuming by virtue of such employment, to represent the corporation) and the owner of the property, the corporation is not represented; hence no contract can result which can bind it, and, as the corporation cannot be bound to the owner, the owner is not bound to the corporation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, §§ 1589–1598.]

2. SAME—RATIFICATION.

When, without the knowledge of any competent corporate authorities, a broker, in the name and behalf of a corporation, negotiates a purchase of real estate, and the owner repudiates the transaction, and withdraws from it, before it is brought to the attention of such authorities, there is nothing for them to ratify.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 1707.]

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; John St. Paul, Judge.

Action by the Jackson Brewing Company against O. Canton. Judgment for defendant, and plaintiff appeals. Affirmed.

Foster, Milling & Godchaux and Alexis Brian, for appellant. Merrick & Lewis, Philip Gensler, Jr., and Ralph Jacob Schwarz, for appellee.

Statement of the Case.

MONROE, J.    Plaintiff sues to compel specific performance of an alleged contract,

represented by the following receipt, to wit:

"Percy S. Benedict, New Orleans, 11/10, '05.
    "Notary Public.
"Received from the Jackson Brewing Co. the sum of five hundred and fifty dollars ($550), being ten per cent (10%) of purchase price of premises No. 1209 N. Peters St. and No. 1208 Gallatin St. in this city, in square bounded by Hospital, Barracks, N. Peters, and Gallatin Sts., balance of purchase price to be paid when title is passed, and titles to be clear of all encumbrances of any character, taxes of 1905, to be paid by vendor.
    "[Signed]            Widow O. Canton."

Defendant alleges that she negotiated with C. Sporl, who assumed to represent plaintiff, for the sale of the property No. 1209 North Peters street, that the words "1208 Gallatin St." were inserted in the receipt without her knowledge, and that, so soon as she discovered them, she tendered back the money which she had received, and, upon its being refused, deposited same to plaintiff's credit in the Commercial Trust & Savings Bank of this city, and notified plaintiff of the deposit. Defendant further alleges that Sporl was without authority at the date of the transaction to represent plaintiff. Wherefore she prays to be dismissed, with costs.

Article 2 of plaintiff's charter reads:

"The objects and purposes for which this corporation is established are declared to be, that of purchasing vacant, or unimproved, real estate, in this city, and elsewhere, and of constructing thereon, maintaining, and conducting a brewery, or breweries, or to purchase a brewery or breweries, already in operation, and to manufacture lager beer and other malt liquors, and to sell all the products of such brewery or breweries."

Article 4 reads in part:

"All the corporate powers of this corporation shall be exercised, and all its business managed, by a board of directors, to be composed of nine stockholders, a majority of whom shall constitute a quorum to transact business. * * * Each board * * * at their first meeting, shall elect, from their members, a president and a vice-president, also a secretary, who may or may not be a stockholder, and such other subordinate officers as may be required: And the board of directors shall fix their respective salaries and define their duties."

There is nothing to show that the duties of the officers so provided for have ever been

defined. It appears, however, that, in 1905, Lawrence Fabacher was president of the company, and that, on the eve of his departure for Europe, he instructed the secretary, "if any opportunity presented itself whereby the company could buy some real estate, to buy it"; that, acting upon the instruction so received, the secretary employed C. Sporl, who negotiated with defendant, with the result, as he alleges, that she agreed to sell the two pieces of property designated in the receipt, and, as she alleges, that she agreed to sell the property designated as "No. 1209 North Peters street."

It further appears that on December 7th following the issuance of the receipt, defendant repudiated the transaction, tendered back the money which had been paid to her, with interest, and, upon plaintiff's refusal to accept, made a consignment of the same by depositing it in bank to plaintiff's credit; that thereafter, on December 14th, at a meeting of the board of directors of the plaintiff company, the secretary, in his financial report informed the board that $550 had been paid on account of the purchase price of the property in question, that the report of the secretary was referred to the finance committee of the board, which approved the same, and that the report of the finance committee was (probably at a subsequent meeting) approved by the board. The evidence upon the subject of the agreement, as entered into between Sporl and defendant, is conflicting, and, from the view that we take of the case, immaterial. The judge a quo dismissed the suit and plaintiff has appealed.

## Opinion.

As the charter of the plaintiff corporation provides that all its corporate powers shall be exercised, and its business managed, by a board of directors, and as it does not appear that its board of directors had ever authorized Sporl to purchase any property, or had ever authorized the president or the secretary of the corporation to confer such authority on him, and, as it does not appear that either the exercise or the delegation of such authority was within the ordinary or apparent powers of those officers, or was sanctioned by any custom of the corporation, it follows that plaintiff was not represented in, or bound by, the alleged contract here sought to be enforced, and, there having been no contract as to plaintiff, neither was there any contract as to defendant. Dodge v. Hopkins, 14 Wis. 687; Cowen v. Curran, 216 Ill. 598, 75 N. E. 322.

The rule upon the subject of the representation of a corporation by other officers and agents than the directors is thus stated in a late work, to wit:

"In general, the representation of a corporation by other officers and agents than the directors—their authority to convey or transfer property and bind the corporation by contracts, and the liability of the corporation on contracts not authorized in fact—is governed by the law governing the relation of principal and agent generally. The general rule is that the president, treasurer, secretary, general manager, and other officers and agents of a corporation have such authority only as is expressly or impliedly conferred upon them by the charter or general law, by the articles of association, or by-laws, by vote of the stockholders or members, and by the board of directors, acting within the scope of their authority, but, like a natural person, a corporation is liable for the acts of its officers and agents which, although unauthorized, are within the apparent scope of their authority, and it may become liable for unauthorized acts by ratification."

Marshall on Corporations, p. 953.

"In view of the fact that presidents of corporations are often given general supervision and control over their management, it has been held by some courts that contracts, or: acts, made, or done, by the president of a corporation, in the course of its ordinary business, will be presumed to have been within his authority, unless the contrary appears. The prevailing doctrine in this country, however, is to the contrary. According to the decided weight of authority, whether he has authority to do a particular act depends upon the powers conferred upon him either by the charter or by the stockholders or directors. * * * The mere fact that he is president, without more, does not imply that he has any greater power than any other director. Although there are some decisions to the contrary, this view is sustained by

the overwhelming weight of authority." Id. pp. 960, 961.

"Virtute officii, a president has very little authority to act for his corporation, and can bind it only by such contracts as come within its most ordinary routine business." Taylor on Private Corporations (3d Ed.) p. 197.

See, also, Bright v. Metaire Cemetery Ass'n, 33 La. Ann. 58; N. O. Baton Rouge & Bayou Sara Packet Co. v. Brown, 36 La. Ann. 142, 51 Am. Rep. 5; Police Jury v. City Council of Monroe, 38 La. Ann. 631; Police Jury v. Wise, 38 La. Ann. 704.

No theory of ratification can be sustained in the case at bar, because, prior to the date at which the matter was first called to the attention of plaintiff's board of directors, defendant had withdrawn altogether, and there was nothing left to be ratified.

Judgment affirmed.