REIMAN CO., LTD., v. BOARD OF COMMISSIONERS, Appellant

(March 15, 1926, Opinion and Decree)

(*Syllabus by the Court*)

1.—Louisiana Digest—Builders and Buildings—Par. 5, 17.

In a building contract based on a unit price as the measure of compensation on an estimated approximate cost and quantity, the contractor can recover only the contract price of the work actually done by him and not the amount stated in the contract as the approximate cost and quantity of the work to be done.

2. Louisiana Digest — Corporations — Par. 130, 134.

No officer of a corporation has the right to make a building contract for the corporation nor to change one already made by its board of directors.

Appeal from Civil District Court, Division "E", Hon. W. H. Byrnes, Jr., Judge.

Action by G. E. and E. E. Reiman Co., Ltd., against Board of Commissioners of the Port of New Orleans.

There was· judgment for plaintiff.

Defendant appealed.

Judgment reversed.

H. W. Robinson, of New Orleans, attorney for plaintiff, appellee.

Arthur B. Hammond and Harold A. Moise, of New Orleans, attorneys for defendant, appellant.

CLAIBORNE, J. This is a suit on a building contract.

The plaintiff alleged that on January 31, 1922, it entered into a contract with the defendant for the sum of $34,187.52 for the erection on the river front of the Robin Street shed and of the Bienville Street shed extension, as appears by a letter of J. H. Walsh, general manager of said board, in lieu of the contract entered into by petitioner and the defendant on February 15, 1921, for the Poydras Street end extension; that the board fixed 200 feet long by 55 feet wide for the Bienville Street shed, and 480 feet long by 100 feet wide for the Robin Street shed, and pointed out and designated the same on the blueprints as the work to be performed for said price; that petitioner performed his contract and earned the $34,187.52; that, in addition thereto, he performed extra work stated in the annexed itemized account amounting of $3182.26, making the total sum of $37,369.78; that he has received on account thereof $35,587.69, leaving a balance due of $1782.09, which he claims from defendant.

The defendant admitted that it entered into a contract with the plaintiff but denied the correctness of the. construction placed upon it by plaintiff; it denied that it fixed the dimensions of the Bienville Street and Robin Street sheds mentioned on the blueprint as the work to be performed for the price of the contract; but that said dimensions were merely for the purpose of showing the lines which the Pensacola steel would reach· on the shed; that the defendant paid to the plaintiff

$1000.00 in settlement of all expenses incurred by the plaintiff and resulting from the change of one shed to another, but that ·it was agreed that the plaintiff should carry out the original contract of February 15, 1921, with the understanding that the work contemplated therein would be performed on the Robin Street and Bienville Street shed extensions, and that in all other respects the contract as executed would remain in full . force and effect; the defendant further averred that the work was bid in on a unit price and that the plaintiff had to perform the same quantity of work to obtain the unit price of so much per square yard on the new shed, under the new agreement of January 31, 1922, which they would have performed on the Poydras Street shed under the old agreement of February 15, 1921, the original contract remaining the same except as to location; it annexed a list showing the area and quantity of work actually performed by the plaintiff; that the plaintiff has performed less work than was contemplated, and that on the basis of a unit price the balance of the work to make up the equal quantity on the unit price according to the agreement amounts to the exact amount for which plaintiff sues.

There was judgment for plaintiff and defendant has appealed.

The whole controversy between the plaintiff and defendant is whether the contract called for the erection of the Poydras Street shed for the flat sum of $34,187.52 mentioned in the contract, or whether it intended that it should be built on a unit basis price according to the estimated amount of work to be done and probable cost, the plaintiff asserting the first proposition and the defendant the latter.

The history of this contract is as follows:

The defendant proposed to erect sheds at the foot of Canal street as a continuation of the Poydras Street sheds. For that purpose they invited proposals from contractors for the furnishing, erecting and painting the material in accordance with specifications prepared by the chief engineer of the board.

The proposals provided:

"That said work shall be done for the full unit price and estimated total lump sum as stated below * * *:

"I. Siding to be removed, lump sum $48; approximately 19 squares;

"II. Siding to be furnished in place: Unit price per sq. ft. or net area $20.66, lump sum $3102.00, estimated quantity 160 sqs.

"III. Roof sheathing, lump sum $9310.00, approximate quantity 115 M ft.

"IV. Painting woodwork, lump sum $2624.00.

"V. Roofing to be furnished in place, unit price per sq. ft. of net surface 19,295, total $12,580.00, estimated quantity 622 sqs., using Barrett specification roof.

"VI. Sheet metal work, lump sum $3422.00.

"VII. Doors 13, unit price each $11.00, total $143.00.

"VIII. Doors 11, unit price each $32.00, total $352.00.

"IX. Sash lights, lump sum $730.00.

"X. Downspouts, unit price each $35.00, total $490.00.

"XI. Electric, lump sum $685.00.

"XII. Miscellaneous lump sum $500.

"Grand total $34,187.52.

"The said contractor shall be paid for said work in accordance with method B,

specified in said specifications and accepted by it, as follows: Method 'B': Once a month the engineers shall cause to be made an estimate of the work in position, applying the unit prices to the quantity of work erected. The contractor shall then be paid 90% of this amount. When the work is completed to the satisfaction of the chief engineer of the board and accepted by him, a survey of the work shall be made to determine the exact quantities in place, to which unit prices shall be applied; the contractor shall then be paid in full for the work done under the contract.'

"It is agreed and understood that the quantities given in the proposal as 'approximate' are only approximate and are to serve as a guide to the bidder in fixing his lump sum bid for such item. The board does not hold itself responsible for the correctness of said quantities. Quantities given in the proposal as 'Estimated' are estimated and shall serve as a guide to the bidder in fixing his unit cost bid for such items; final quantities of these items under unit cost will be determined as follows: Sidings and roofings: Net area covered. Doors and cast-iron downspouts. As called for the proposal."

The plaintiff became the successful bidder under those specifications. But neither the plaintiff nor the defendant has offered the bid in evidence. The officers of defendant swear that the bid was a unit bid and not for a lump sum. They have no interest in the matter. Nowhere in the testimony does plaintiff deny this. The letter of the specification supports the defendant's interpretation. They are different from ordinary building contracts. Why are they different and why are all these estimates as to price and quantities given, if the shed were to be erected for a flat price?

The best rule of interpretation is that prescribed by Article C. C. 1956 (1951): "When the intent of the parties is doubtful the construction put upon it, by the manner in which it has been executed by both, or by one with the express or implied assent of the other, furnishes a rule for its interpretation."

It is in evidence that when more work was done by the plaintiff than was mentioned in the approximate estimate contained in the specifications, the plaintiff was paid more for it, and that when less work was done, the difference was deducted.

Samuel Young is the Chief Engineer of the defendant Board. He testifies:

"Q. Now take the first item on his bid; he bid no unit price, but a lump sum price. How did you arrive at a unit price on that for him?
"A. He bid on approximate 19 squares, and we paid him for 31 squares which he did. Where he did less, we paid less; where he did more, we paid more.
"Q. You divided 19 into $48 and paid him on the higher price accordingly?
"A. Yes. * * *
"Q. Now, whenever· he did more work than contemplated in the original contract, he was paid for more, you said?
"A. Yes, sir, paid for extras.
"Q. And when he did less, you applied the unit prices?
"A. · Yes, sir.
"Q. And you paid him on the basis of 480 feet, in accordance with the Poydras Street contract, and no more?
"A. Yes, sir."
L. C. Le Corgne, estimator and superintendent for plaintiff, says:
"Q. At what price did you do more or less?
"A. We did a little more roofing, which was paid for; we did a little more sheet metal work, which was paid for."

It nowhere appears that the plaintiff was to perform all the work mentioned in the Poydras Street contract for the flat price of $34,187.52. But it seems apparent, on the contrary, that unit prices were fixed for every part of the work contemplated, and an approximate estimate af the whole made for the work; subject to increase or

decrease as the amount of work done varied from the estimate.

But it seems that after the bids were made and accepted for the construction of the sheds at the head of Canal Street, some protest was made and heeded by the Board. The sheds on Canal Street were abandoned and in lieu thereof two sheds were built, one on Bienville Street, 55x200, and the other on Robin Street, 100x480.

The plaintiff was given the construction of both.

Plaintiff testifies that he took this amount of $34,187.52 for his contract. Le Corgne, his superintendent, testifies that he (Comer) said: "You are going to erect 24 bents on this blue print 480 feet by 100 feet;" "and I said, 'Does these two pieces of shed complete all of our contract?' and Mr. Comer said, 'Yes.' Mr. Young told me yes. I was led to believe by Mr. Young and Mr. Comer that if we took the Bienville Street shed and the Robin Street shed that that settled the contract, plus the $1,000 given to Reiman."

Although the two engineers of the defendant Board, Young and Comer, did not specifically deny these statements, their testimony, in denial of plaintiff's claim, is a continuing denial of them. Besides, neither Young nor Comer had authority to make a contract for the Board or to release a contractor from any part of his obligations under a previous contract with the Board. C. C. 439, 8372 Ct. App., 12 Ct. App. 366; Bright vs. Metairie Cemetery Association, 33 La. Ann. 58; New Orleans B. R. & B. S. P. Co. vs. Brown, 36 La. Ann. 142; Burchfield vs. City of New Orleans, 42 La. Ann. 238, 7 South. 448; Police Jury vs. Mayor and City Council of Monroe, 38 La. Ann. 631; Jackson Brewing Company vs. Canton, 118 La. 823, 43 South. 454; Reynolds and Henry Construction Company vs. Police Jury, 44 La. Ann. 870, 11 South. 236; Jeanerette Rice & Milling Company vs. Durocher, 123 La. 160, 48 South. 780; Bradshaw vs. Knoll, 132 La. 829, 61 South. 839.

The only reliable and authoritative evidence in the record relative to this matter is the following letter:

"January 31, 1922.

"Board of Commissioners of the Port of New Orleans:

"G. E. and E. E. Reiman Co., Ltd.,

"Weiss Building, New Orleans, La.

"Gentlemen—This will confirm our conversation of this morning with reference to your contract with the Board of Commissioners of the Port of New Orleans for the trim of the Poydras Street end extension.

"The Board agrees to pay you the sum of $1,000 in settlement of all extra expense incurred by you due to the delays in executing the work contemplated by this contract. It is further agreed that you will proceed to carry out the contract as entered into between you and this Board on the fifteenth of February, 1921, with the understanding that the work as contemplated therein will be performed at Robin Street and Bienville Street shed extension, and that in all other respects the contract as executed will remain in full force and effect, reserving to you the right of compensation for any extra work which may be necessary by reason of change of the location of said work as contemplated by the fourth article of the said contract under the heading of 'Extra work.' Kindly acknowledge receipt of this letter confirming the above.

"Very truly,

"J. H. WALSH,
"General Manager."

There is not a word in this letter in support of plaintiff's claim of a change in the original contract, or that the work that would be done on the Bienville and Robin Street sheds would be paid the price of $34,187.52. The work that was contemplated to be done on Canal Street on the Poydras Street extension, according to the

original contract, would be performed at the Robin Street and Bienville Street sheds on the same terms and conditions. The change was only in the location of the work to be done. "In all other respects the contract as executed will remain in full force and effect." The burden of proof was upon plaintiff to establish the change of price, and we do not think he has done so.

The sum of $1,782.09 "represents the difference between the quantity of work contemplated in the Poydras Street contract and the work that they (the plaintiff) actually performed at Robin Street and Bienville Street"; in other words, represents the price of an amount of work which the plaintiff did not do. To this it is not entitled under its contract.

It is therefore ordered that the judgment herein be reversed and set aside, and that there now be judgment in favor of defendant rejecting plaintiffs' demand at its cost in both courts.