No. 2212

Second Circuit

---

## ALLEN MANUFACTURING CO. v. PEOPLES STATE BANK

---

(April 8, 1927. Opinion and Decree.)

---

(*Syllabus by the Editor*)

1. Louisiana Digest—Banks and Banking —Par. 35, 36, 39.

The purchase of building material by the president of a bank without authority of the directors, for his personal use, was outside of his official sphere and did not bind the bank.

2. Louisiana Digest—Banks and Banking —Par. 35, 36, 39.

The fact that one is president of a bank does not give him any powers to bind the bank for the purchase of building material which was used for his individual account.

3. **Louisiana Digest—Banks and Banking —Par. 39; Corporations—Par. 180.**

One who sells building material presumably to a bank through its president cannot claim that he relied on the authority of the president to bind the bank for the payment of the building material, because banks have no use for building material.

Appeal from the Eleventh Judicial District Court of Louisiana, Parish of Red River. Hon. J. W. Jones, Jr., Judge.

Action by Allen Manufacturing Company, Ltd., against Peoples State Bank.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

S. M. Cagle, of Coushatta, attorney for plaintiff, appellant.

S. R. Thomas, of Coushatta, attorney for defendant, appellee.

ODOM, J. This is a suit to recover $180.33 for goods and supplies alleged to have been sold and delivered to the defendant bank.

The defense is that the goods were not ordered by or for the bank but by its president for his own use and benefit and that the bank did not receive or use the goods.

There was judgment rejecting plaintiff's demand and it has appealed.

## OPINION

The facts, as disclosed by the record, are that in May, 1923, someone called plaintiff over the telephone and ordered shipped to the defendant bank some build-ing material, including plate-glass, beaver-board, three pairs of butts, three locks, and three cylinder garage door locks.

At the time the order was made plaintiff did not know who was talking over the telephone, but it is evident from subsequent correspondence that the goods were ordered by I. C. Cole, who was at that time president of the defendant bank.

The goods were shipped to the bank and received presumably by Cole. The testimony establishes beyond question that Cole took and used the material in building a garage for himself.

Cole was not authorized by the board of directors of the bank to purchase the goods. He had no authority under the general law, or under the charter or by-laws of the bank, to make such a purchase for the bank. The bank had no use for the material, did not get it or use it, and none of the officers or directors of the bank knew anything of the purchase until several months later, after Cole had severed his connection with the bank. When the officers and directors of the bank learned of the transaction, they promptly repudiated it.

It is proved beyond question that Cole had no authority to make such purchase for the bank and that the purchase was not ratified by the board of directors or other officers of the bank, and it is practically conceded by counsel for plaintiff that such a transaction is beyond the general authority conferred upon bank presidents.

But plaintiff sought to show that Cole, by acquiescence of the board of directors of the bank, was general manager thereof

and was so held out to be by the board, and that the public generally was led to believe that any acts of his in the name of the bank would be approved by the board of directors.

But plaintiff utterly failed to show this. There is not a syllable of testimony showing that Cole exercised any authority beyond that usually exercised by bank presidents.

A bank may become bound by the unlawful and ultra vires acts of its president under certain circumstances, as, for instance, where it accepts the benefits of his acts, or has expressly or impliedly held out that the acts were within the scope of his authority; or where the directors have acquiesced in a particular course of conduct of which his acts are a part.

Such was not done by the bank or its directors in this case.

Counsel, in brief, quotes as follows from the case of Citizens Bank, etc., vs. Thornton, 174 Fed. 752:

"A bank which has intrusted the conduct of its affairs to its president, such conduct being within the range of the authority customarily given to such officer, is bound to one who has parted with his money in good faith reliance on the authority so exercised, whatever may be the limitations which the by-laws or resolutions of the board of directors in fact placed on it, of which he has no knowledge."

No fault can be found in the rule thus laid down. But that rule is fatal to plaintiff's contentions, for two reasons:

First, because the conduct of Cole in the purchase alleged to have been for the use of the bank, was not "within the range of the authority customarily given to such officer", and

Second, because the plaintiff did not part with its goods "in reliance on the authority so exercised".

Plaintiff knew, or should have known, that the purchase of building material is no part of the banking business. With such knowledge, plaintiff should have inquired into Cole's authority to make the purchase, especially in view of the fact that there were three garage locks on the bill.

Even if it were true, and it is not, that the public was led to believe that Cole was permitted to exercise authorities beyond those usually exercised by bank presidents, that would not avail plaintiff, for the reason that plaintiff did not deal with Cole in reliance on such authority.

When the goods were sold, plaintiff did not know Cole, did not know the bank officials, did not even know who was talking over the telephone, and was therefore not misled.

A chartered bank is responsible for the acts of its officers within the scope of their apparent authority. To render a bank responsible for the acts of its officers, the act must be done for the bank, and if the officer goes beyond the range of his duties and does an unlawful act, the bank is not liable, unless the other party believed and had good reasons to believe that the officer was acting within the scope of his authority.

In this case, Cole did not act for the bank and there was nothing in the nature of the transaction to lead plaintiff to be-

lieve that he was acting within the scope of his authority. On the contrary, the very nature of the transaction was such as to put plaintiff on guard. The party who ordered the goods did not disclose his name, his official capacity, or suggest his authority to bind the bank. The goods were not such as are ordinarily used in the course of banking.

Counsel for plaintiff cites in brief the following common law authorities:

Corpus Juris, volume 7, page 739.

5 Cyc., page 471.

Marshall on Corporations, page 281, and 790.

All these authorities, in view of the testimony in this record, are against plaintiff's contention.

For instance, he cites 5 Cyc. 471, where the rule as to the cashier's authority is thus stated:

"His conduct outside of his official sphere which is not criminal or contrary to public policy, if known and accepted by the bank, is binding thereon, and even though contrary to law if done by authority of the directors it is maintained that the bank is bound."

The facts disclose that the conduct of Cole, the president of the bank, was outside his official sphere, was not known or accepted by the bank, and his act was not done by authority of the directors.

Counsel for plaintiff also cites the case of Robert Gair Co. vs. Columbia Rice Packing Co., 124 La. 194, 50 South. 8.

That case is also against him. The third paragraph of the syllabus reads as follows:

"Persons dealing with the president of a corporation in the usual manner and within the scope of the powers which the president had been accustomed to exercise with the assent of the directors, though in ultra vires of the corporation, may assume that he had been actually invested with such powers."

The corporate powers of the bank were, by its charter, vested in a board of directors. The very fact that Cole was president did not imply that he had any greater powers to do a special act than any other director.

Reed vs. Powell, 11 Rob. 98.

Taylor vs. Vossburg Mineral Springs Co., Ltd., 128 La. 364, 54 South. 907.

Brewing Co. vs. Canton, 118 La. 823, 43 South. 454.

For the reasons assigned, the judgment appealed from is affirmed, with costs in both courts.